# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLADIMIR ASCENCIO-AGUILAR, | Case No. 1:26-cv-01416-KES-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND GRANT RESPONDENTS' MOTION TO DISSOLVE NO-TRANSFER ORDER |
| v. | |
| WARDEN OF THE MESA VERDE DETENTION CENTER, et al., | |
| Respondents. | (ECF Nos. 1, 17) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends denying the petition for writ of habeas corpus and granting Respondents' motion to dissolve the no-transfer order.

**I.**

**BACKGROUND**

Petitioner is a citizen of El Salvador who entered the United States at or near Brownsville, Texas, on or about May 29, 2007. On June 3, 2007, the Department of Homeland Security ("DHS") initiated removal proceedings under section 240 of the Immigration and Nationality Act ("INA") by issuance of a notice to appear, charging Petitioner with inadmissibility under INA section 212(a)(6)(A)(i). (ECF No. 10 at 12.[1]) On June 14, 2007, an immigration judge ("IJ") ordered Petitioner removed to El Salvador. (Id. at 15.) On August 7, 2007, Petitioner was removed from the United States pursuant to the order of removal. (ECF No. 10 at 22.) Petitioner returned to the United States in 2008 and has resided in Maryland since 2008. (ECF No. 16 at 2.)

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

On January 24, 2026, Petitioner was taken into U.S. Immigration and Customs Enforcement ("ICE") custody. (ECF No. 10 at 19.) On January 25, 2026, DHS reinstated Petitioner's order of removal pursuant to INA section 241(a)(5). (Id. at 19, 22.) On February 17, 2026, Petitioner's immigration attorney requested a reasonable fear interview. On February 21, 2026, Petitioner was transferred under ICE custody to Mesa Verde ICE Processing Center, where he awaited referral to an asylum officer for the reasonable fear interview. On or about February 25, 2026, the referral was accepted. (Id. at 9–10.)

On February 18, 2026, Petitioner filed a petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1 at 6–17.) The Court construed the petition as also challenging the statutory authority for Petitioner's detention. (ECF No. 5 at 1.) On February 20, 2026, the Court prohibited Respondents from transferring Petitioner out of this district "[p]ending the Court's decision on the petition, and unless and until the Court orders otherwise[.]" (ECF No. 4.)  On March 6, 2026, Respondents filed a response. (ECF No. 10.) On March 11, 2026, the Court granted Petitioner's motion to appoint counsel. (ECF No. 12.) On April 10, 2026, Petitioner filed a reply. (ECF No. 16.) On April 29, 2026, Respondents filed a sur-reply and motion to dissolve the no-transfer order. (ECF No. 17.) On May 2, 2026, Petitioner filed an opposition to the motion to dissolve the no-transfer order. (ECF No. 18.)

**II.**

**DISCUSSION**

**A. Zadvydas**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular,

2

§ 1231(a)(6) provides that after a 90-day 'removal period,'[2] a noncitizen 'may be detained' or may be released under terms of supervision." Id. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

---

[2] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

"In *Zadvydas,* the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted). Here, Petitioner received notice that his 90-day mandatory detention period has concluded, (ECF No. 16 at 2), but Petitioner's detention has not exceeded the presumptively reasonable six-month period. However, the "six-month presumption of reasonability under *Zadvydas* is 'just that—a presumption.'" Burunsuzyan v. Noem, No. 5:26-CV-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026) (quoting Clark v. Martinez, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring)). "Such a presumption is not a 'prohibition on claims challenging detention less than six months.'" Burunsuzyan, 2026 WL 246067, at *5 (quoting Hoang Trinh v. Homan, 333 F. Supp. 3d 984, 993 (C.D. Cal., 2018)). "The central holding of *Zadvydas* is that section 1231(a)(6) does not permit detention beyond the initial 90-day removal period when removal is not reasonably foreseeable. At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period." Hoang Trinh v. Homan, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (citation omitted). Accord Ndandu v. Noem, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *3 (S.D. Cal. Jan. 5, 2026) ("Multiple district courts have found that the six-month presumption is rebuttable.") (collecting cases).

Zadvydas "held that detention for less than six months was *presumptively* reasonable but left the lower courts to determine whether detention has 'exceed[ed] a period reasonably necessary to secure removal' in individual cases." Hoang Trinh, 466 F. Supp. 3d at 1092 (quoting Zadvydas, 533 U.S. at 699). "Accordingly, we must assess whether Petitioner has established enough evidence that his removal is not reasonably foreseeable." Burunsuzyan, 2026 WL 246067, at *5.

In the traverse, Petitioner asserts:

> Under these circumstances, an asylum officer's assignment, assessment and report being finalized, prior to all procedures requisite for removal being completed is exceedingly unlikely to

4

occur before April 24, 2026 or by July 23, 2026. Because there is no realistic likelihood that removal can safely occur at any time, nor that even unsafe removal will occur prior to the termination of the 90-day mandatory detention period, or prior to July 24, 2026, at which time Petitioner's continued detention will violate federal law and due process, this Court should set a detention hearing for April 24, 2026, at which time Petitioner will be afforded the most minimal due process available.

(ECF No. 16 at 5.) However, subsequently, "Petitioner had a reasonable fear interview with an asylum officer, which was reviewed by an Immigration Judge who concurred that [Petitioner] did not establish a protected ground based on a totality of the record." (ECF No. 17 at 1.) Further, "Petitioner did not file a petition for review of the reasonable fear determination with the Ninth Circuit United States Court of Appeals and the time to do so has expired." (Id.) In the opposition to the motion to dissolve the no-transfer order, Petitioner does not dispute these subsequent developments. (ECF No. 18.) As Petitioner has a reinstated order of removal and the time to file a petition for review of the reasonable fear determination has expired, the undersigned recommends finding that Petitioner has failed to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Zadvydas, 533 U.S. at 701, and thus, habeas relief is not warranted on this ground.

**B. Prolonged Detention**

The Ninth Circuit has observed that "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." Diouf II, 634 F.3d at 1092. "Several circuit and district courts have found that unreasonably long detention periods with no allowance for a bond hearing may violate the due process clause," but "these cases involved detention periods substantially longer than 6 months." Quezada Haro v. Warden of Mesa Verde Det. Facility, No. 1:26-cv-00632-KES-SKO (HC), 2026 WL 221782, at *2 (E.D. Cal. Jan. 28, 2026). See Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" (alteration in original) (quoting Muse v. Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018))). Here, Petitioner's detention period of approximately three and a half months "is well within the 6-month

presumptively reasonable period contemplated in <u>Zadvydas</u> and does not implicate those constitutional concerns." <u>Quezada Haro</u>, 2026 WL 221782, at *2. Accordingly, the undersigned recommends finding that Petitioner's detention "does not qualify as unreasonably prolonged as to violate his Fifth Amendment due process rights." <u>Id.</u>

### III.

### RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be denied; and

2. Respondents' motion to dissolve the no-transfer order (ECF No. 17) be granted.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 5, 2026**  /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE